The next matter, number 23-1617, Fesno v. Lafortune v. Merrick v. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin. Yes, good morning, Your Honor. It's Todd Pomelo on behalf of the Estella Platoon, along with co-counsel Michael Kaplan. May I respectfully reserve two minutes for rebuttal? You may. Thank you. Could you please move the microphone closer? There's two main arguments I wish to address today for why this case should be remanded for further hearings. The first argument deals with my client's request for withholding of removal. In order to deny him that application if he is convicted of an aggravated felony, the immigration judge was required to follow its own precedent and failed to do so. And the second issue is that his Regarding the first step in this case, our client has two convictions. He's convicted of bank fraud. He's also convicted of aggravated identity theft. You can't have a freestanding aggravated identity theft conviction. The statute for aggravated identity theft cross-references other predicate offenses, such as conspiracy to commit bank fraud, the two crimes he's convicted of. There's a bit of a red herring in the government's argument that the notice to appear alleges the conspiracy to commit bank fraud and therefore that had to have been the particularly serious crime that the immigration judge was looking at. That's wrong. Immigration judges routinely look at your entirety of your criminal history in determining whether you're eligible for relief from removal. When his application for asylum is rejected, the But they're not per se bars to withholding of removal. So when you have a withholding claim, it's a per se bar only if you've served five years in prison or more. If a sentence is less than five years in prison, whereas here he got 31 months, there's an analysis that must take two steps. It's the NAM case, matter of NAM. So under matter of NAM, the first thing you have to do is identify which conviction you're looking at. So when the IJ issues the decision here, Mr. LaFortune is pro se throughout these proceedings below. She indicates that the conviction for the conspiracy to commit bank fraud bars him from seeking asylum. Then there's a discussion about whether his case is still on appeal or not. It turned out his appeal was not valid anymore, which makes convictions final for immigration purposes. She then says she agrees with the government that he's withholding claims saying that he has convictions for conspiracy to commit bank fraud along with the aggravated identity theft. That's a hybrid approach that's been rejected by courts. We've cited a Second and Third Circuit precedent recently. There's also a decision cited in a 28J letter written by my brother. That hybrid approach is problematic because step one requires doing an elements analysis of the crime you're holding. The Ninth Circuit in the bar case, I think, says we don't need to be too formal about that. It lists some criteria in which we can excuse effectively not doing an express review of the elements at the first step if the crime has a certain quality. As I read the Second and the Third Circuit decisions, like it's even the Fourth Circuit decisions, they don't really disagree with the Ninth Circuit on that point. It's just a matter of are we dealing with such an offense. So what do you say about that? Because there seems to be some sense to what the Ninth Circuit is saying on that score. That's a good point. But, I mean, again, when you have these two convictions, you know, coterminous convictions that are cross-referenced by the same aggravated identity theft statute, that's a 101, it's a 43. Just for the purpose of this question, if we isolate just on, imagine that we could read the record to think that the IJ correctly identified the conviction as at least conspiracy to bank fraud. Taking that under the Ninth Circuit, Second Circuit, Third Circuit, and Fourth Circuit precedent, it's not entirely evident to me how to think about whether there was a violation of NAM as those two convictions. Because they say the first thing you do is look at is it a sentence, an aggravated felony has a five-year sentence because we're trying to figure out was it potentially within the ambit. And then they say it has easy elements to understand. And then there, though, in the Ninth Circuit case, I guess it was a gun case. So how are we then supposed to look at whether there was a misstatement of the elements that the court, that the IJ proceeded to the second step? Well, here there's no statement of the elements whatsoever. There's a reference merely to the two different convictions at issue. Yeah, but if the elements are on their face, elements that would bring it within the ambit, that seems to be what the Ninth Circuit's saying as long as they're not misstated. Because there was a misstatement in the Third Circuit. They treated it as if it was an element. It's not an element. There's no misstatement here. You don't allege there was a misstatement of elements. There's no analysis. Here the issue really is failure to follow its own precedent. If the immigration judge or the BIA are going to depart from its own precedent, there needs to be some explanation. Otherwise you're dealing with arbitrary and capricious agency action. What I'm trying to figure out is what does the precedent require? The Ninth Circuit has also construed it to not be that formal, that there are instances in which without going through a description of the elements, you can get to the second step. If the nature of the crime on its face has elements that would bring it within the ambit, so it's potentially a PSC, are you saying this is not such an offense? No, because even if it's within the ambit, that's step one. Step two then requires... Correct, but he did step two, didn't he? Not all of it, no. Three crucial points of step two are omitted. There's only a consideration of negative factors. It's supposed to be a weighing of its positive and negative factors. It's supposed to look at the totality of the circumstances. The totality of the circumstances weren't looked at at all. Okay, but you're also saying there was a violation by not doing step one, correct? Yes, step one is omitted and it's unclear which crime is being referred to because the word conviction is used when referring to the asylum bar. Aggravated felonies, again, are per se asylum bars, but not when you get to the particularly serious crime requisite to be a bar for the withholding claim. And here, that's why we're engaging right now in guesswork what the IJ was doing. Did she identify... What do you say? What significance should we give to the fact that the government is arguing that that is a shorthand way of precisely doing the elements analysis by pointing to another case that did it? Respectfully, I would disagree. The Valerio case cited, it's in our brief, too. Valerio is somebody who was effectively the mastermind of a conspiracy that was ongoing for 10 years. That would be part of the totality of the circumstances analysis. No, but I'm talking about step one. Well... Isn't step one focusing just on the elements of the offense? Well, it's the elements of the offense, whereas here we have two different convictions and the IJ uses the word convictions when rejecting his eligibility for withholding. She uses the word conviction twice when referring to the rejection of his ability to seek asylum. And that's where there's no clarity. Before you get to step one, you have to identify which crime you're doing the analysis for. So she's referring to convictions and using the generic definition of an aggravated felony. Again, if aggravated felonies are per se bars, it's unclear. Perhaps the judge thought they were per se bars for withholding only. She doesn't say this is under five years, therefore we look to the Frantescu factors. For example, let's go through the elements under prong one, matter of NAM. Then we get to prong two where you do the Frantescu factors. There's a mention of, and then in Frantescu you're supposed to compare the crimes in the aggregate to determine, for example, you're a danger to the community. There's no analysis whatsoever whether he's a danger to the community. There's no weighing of any of his positive factors. Is there a deferential review at step two? Step two does have deferential review. But that would help you if there was deferential review because I take it the idea is since there's deferential review at step two, it makes it very important that we think, since we're going to be deferring to the agency's step two decision, that the agency wasn't tainted in its step two analysis by a misapprehension at step one. That's correct. And your argument is that the agency wasn't tainted by a misapprehension at step one because it didn't say enough about step one to make it clear that it wasn't. That's the idea. But it didn't say enough about step one. It doesn't, with clarity even, address which crime to refer to. Because again, referring to a generic aggravated felony definition that cross-references each conviction. And then when she rejects the argument, she refers to both convictions. And without doing the analysis, it's hard for this court to engage in proper scope of appellate review. The BIA doesn't really address the argument either. It cites approvingly the Francesco factors. It doesn't say how the I.J. even engaged in those. And again, I think it's just a jumbled hybrid approach here that this court should reject and should remain. So just so I get this point of the argument, your contention is not that the problem is that if you properly did a step one analysis and looked at the elements, the actual conviction here of conspiracy to make bank fraud would not be a step one. It would not potentially fall within the ambit. In other words, if they had done the analysis correctly, it would pass step one and then you would go to step two. Your concern is that we don't know at step two that the judge had the right, I.J. had the right understanding at step one. And therefore, it might have colored how they did step two. So we can't defer to it. Is that the idea? That is the idea. Yes, Your Honor. And the issue is that they are both aggravated felonies. But again, that doesn't mean it's a per se bar to withholding. You have to go through the analysis. At step two, the judge could have looked at his role in the crime, looked at all the positive factors and maybe made a determination that this was not such a crime that would bar him from seeking the withholding of removal protection, which is a lower standard to meet than the Convention Against Torture. I'm still puzzled as to how Wyeth would say, I.J. said in making the determination that this is a particular crime that the court considered the case of Valerio Ramirez and then proceeds to discuss that case's treatment and analysis of the elements of an aggravated identity theft. Why wouldn't we read that as saying this I.J. is doing the same thing by reference to Valerio? She's also referencing the conspiracy to commit bank fraud charge and using the word convictions for what she says he's barred from seeking asylum, I mean, withholding of removal. But she says the other crime involved in Valerio was bank fraud just as in this case. Right. That would be part of the Francesco factor where you're looking at the totality of the circumstances. But on step one, it would seem that the judge is just signaling quite clearly that he's following the same step one analysis as in Valerio Ramirez. Respectfully, I think there's a lack of clarity on this record to make that determination. Regarding the Convention Against Torture claim, if I could just be brief, the immigration judge highlighted five errors, which didn't allow for full development of the record. He was pro se. He gets a remand. Attached to his notice of appeal is additional documentary evidence, affidavits in which he attempted arson on his home. He has a bunch of additional evidence, but his issue is you can never secure counsel. The second time on remand, he still doesn't have counsel, but he has new documentary evidence, which plugged in some of the holes, the deficiencies in his original denial. And the immigration judge didn't consider any of that evidence, merely restated her prior decision, because he didn't have counsel present at the hearing and denied yet another contingency on that basis. If that evidence was considered, he should have been granted Convention Against Torture protection, and we would respectfully ask a remand for that purpose as well. And did that evidence, as I understand the IJ, the denial of the CAT depended at least in part on a finding of no requisite government action. Did that new evidence go to that issue? Yes, it did, Your Honor. In what way? So the two affidavits, one was from, permission to answer? Yeah. The declarations were from his sister and his aunt, and they discussed in detail how his father had been in hiding. There was discussion earlier about four different police reports. When our client lived in Haiti, he was a very young child. So there's reference between what was going on between 2004 and 2008 when he had resided there. There was evidence that six months prior to his individual hearing for the immigration judge, his father went hiding again. He was a supporter of the Lovalis movement. The president in 2021 was assassinated. There's gangs that have overthrown the country right now. There's a lot of stuff in the news recently about how horrific the human rights abuses are. And those declarations spoke specifically that members of Lovalis, those supporters, are being kidnapped, they're being tortured, they're being executed, they're being killed. And she didn't consider any of that. And respectfully, if somebody is in hiding, I think it would be harder to torture them if you don't know where they are. And she disconsidered the fact that nothing had happened to him before he was in hiding. He's been in hiding since 2021. He may be deceased. And those are issues that she didn't even address. She indicates that something happened in 2021, but is only focused on what happened in 2004 through 2008 when Mr. Lafoutine lived in Haiti. So he respectfully would have met his burden had this evidence been considered. And it was improper not to do so, in addition to the other arguments in our briefing. Judge Lopez? Counsel, I'm a little puzzled by your argument that the IJ did not give your client an opportunity to develop the record further in this set. First of all, the purpose of the remand here was to give him the opportunity to go forward with counsel. She granted a number of continuances for that purpose. He still couldn't show up with counsel. And at that point, she says, we're going to go forward. But she does, in essence, ask if he has anything further that he would like to present. And basically, he tells the IJ that I previously gave you everything that I had, including what was presented to the BIA on appeal. So he, again, he's not an attorney. He doesn't have the benefit of counsel. But he seems to be saying to the IJ, I gave you everything I had on this convention against torture issue, and that should be enough. In light of what he says, why would the IJ then be required to reopen the record when he essentially tells the IJ, I already gave you everything that you need in order to make a favorable determination under the convention? Respectfully, it's unclear. Again, he's pro se. It's unclear what he's referring to. I gave everything you need during the first hearing, including what was submitted on appeal. What was submitted on appeal is favorable evidence in support of his CAT claim that was not considered by the immigration judge. She merely restated her prior decision from a year prior, didn't reference this new evidence whatsoever, and the board overlooks it, frankly, in its decision. So those issues should have been considered. And what's unique here with Convention Against Torture Claims, Judge Lopez, is the immigration judge isn't acting as much like a neutral, you know, in a claims process proceeding, somebody who's being neutral and addressing objections by both parties. There's a heightened standard that's applied for her to develop the record, to abide by treaties our government has signed, to make sure people are protected against torture. And he's doing the best he can pro se. He's not entitled to court-appointed counsel. He tried twice to get counsel. He had immigration advocacy groups trying to secure counsel for him, and the only time he was ever able to get counsel was on appeal. And he had favorable evidence that should have respectfully been considered had the immigration judge followed her role to give him the benefit of the doubt here and consider that evidence. So I would respectfully suggest that that was error not to have reopened those proceedings and considered the evidence in its totality. And reamend is therefore warranted. Thank you. Thank you, counsel. At this time, counsel for the government, please introduce yourself on the record to begin. Good morning. May it please the court. Greg Mack for the Attorney General. There are flaws in petitioner's logic concerning his chief complaints that the agency failed to develop the record. It did not sufficiently explain its decisions. However, there really wasn't anything for the immigration judge to develop in this case regarding the likelihood of torture, given that petitioner has not been in Haiti since 2008. And also, there's a gaping hole in his evidence, and that's with respect to his father. The immigration judge was keenly interested in what was going on with petitioner's father and exploited that on the record in testimony with petitioner. And petitioner couldn't come up with direct evidence from his father. His father provided police statements through his sister via Federal Express from either Haiti or the Dominican Republic. But the immigration judge, again, was keenly interested in hearing directly from petitioner's father. There's no evidence directly from petitioner's father. And we pointed out in our brief in the Brazil decision, there has to be a tight correlation. If you're going to point to a family member's travails in Haiti, you've got to tie yourself closely to that particular individual in order to meet your burden of proof before the immigration judge. And again, that's that gaping hole in this particular case. With respect to the particularly serious crime determinations, there are failures to exhaust in that area. And as was explored previously with the court, this whole point about elements is, I mean, we have to be really clear about this. You have to be exceedingly blinkered to read the record in this fashion to try to make the point that I can't figure out or I'm confused which conviction the immigration judge is looking at. The immigration judge is looking at the conspiracy to commit bank fraud here in Massachusetts. That's the conviction that is disqualifying PSC in this case. Sure, the immigration judge looks at aggravated identity theft in connection with the Valerio Ramirez case to say, look, Valerio Ramirez says, when there's two convictions, I can look at the elements of both. And again, you can't read the immigration judge's statement in that context to say that you should be confused by which conviction the immigration judge is looking at. So the immigration judge is clearly looking at the conspiracy to commit bank fraud because later on in the immigration judge's decision, she says, I disagree that you were not, you were an unknowing participant in the conspiracy. But there seems to be two different things going on. Let's say that everything you just said is right. Then there's the question of what is the IJ's obligation before getting to the second step to make it evident that it understands what the nature of the conviction is. Because the worry is if it has a misapprehension about that, if it thinks the elements on their own make it too serious, its analysis at step two will be tainted by that misapprehension. That's at least what I take away from the Ninth Circuit, Second Circuit, Third Circuit and Fourth Circuit cases. Do you disagree with that? I disagree with it in this regard. I think the elements analysis or the elements question is really asking whether this offense potentially puts it within the ambit of a particularly serious crime. And the worry is that if the judge thought that in fact it's automatic or thinks it does because it has elements it doesn't have, that could color step two. It could, but that's not what's going on here. Okay, so let's try and figure out whether we can be confident that's not going on here. In the Ninth Circuit bar decision, they say if a crime has certain features, no big deal if you don't mention the elements. It ticks off a number of those. The sentence is five years for the offense. It's a common type of offense. The elements are fairly straightforward. But there it was a gun case. The Fourth Circuit then has a wire fraud case or mail fraud case. And it says, well, I don't know that every mail fraud is within the ambit. Do we know that every bank fraud with identity theft is within the element or is that why Valerio, the reference to Valerio is so important here? I'm just trying to figure out what's going on because I think the Fourth Circuit's worry was, well, you might have thought that all wire frauds are themselves so serious that that would affect how you looked at step two. And there's a certain sense to me. And I could imagine in theory that would be true for bank fraud. Some versions of bank fraud could be a very contestable question about did they misstate the amount of a mortgage on a form or something like that. Other things are quite serious. And so we want to make sure that the judge understands what the thing unless the government's position is bank fraud per se fits within the ambit. And any offense that has a sentence of five years automatically is within the ambit. I don't think we've ever held that. No, we're not. We're not saying that at all, Your Honor. And I think the point about the elements, which we also make in our brief, is petitioners didn't provide the elements to the Board of Immigration Appeals to figure this all out. No, it's not focused on whether the elements qualify. It's focused on the procedural point that we don't know that the IJ had the correct assessment at step one and therefore it tainted step two. So the elements, you wouldn't need to show what the elements were because he's not contesting that it can pass step one. He's simply saying the IJ didn't do the things you need to do to make it evident to us that it correctly assessed what the elements were for purpose of doing the step two analysis. And I think you would need to give the Board the elements to say the immigration judge didn't consider these elements and therefore we can't move on to step two. Because the Board in this context has de novo review over the question of whether this is a particularly serious crime. So the work that had been done before the Board to consider the elements. Is there no deference to the step two analysis by the Board? By the Court. By the Board has de novo review over this question. There's no deference by the Board. You have de novo review. You have abuse of discretion review over the particularly serious crime question. But the Board has plenary review over that question. And if we're fighting over whether the immigration judge considered the elements, provide the agency with the elements to say whether it's wrong or not. And that's not what happened here. Also, with respect to Valerio Ramirez, what the immigration judge was saying is if there's two convictions, I can take both convictions into account to figure out whether this is a particularly serious crime. But you shouldn't be confused by that statement to say that I can't figure out which particularly serious crime is in question here. And that's why we said, look, the notion to appear has one conviction. It points to the conspiracy to commit bank fraud. And again, I think that's why the Ninth Circuit's position. But just take the Fourth Circuit case. You have a mail fraud conviction. And they say, OK, the judge says it's a mail fraud conviction. We have cases in which mail fraud convictions have been found to be PSCs. I'll go to the second step. The Fourth Circuit said you can't do that. Well, how is that different than what happened here? It's different here because, and we point to the Ninth Circuit's position, it shouldn't be so formalistic. And again, we have a federal conviction here just as the Ninth Circuit. The Fourth Circuit's not saying that's true for every offense. Certain offenses, it might be even the gun case. That's what I think the Fourth Circuit says. There was a gun crime. They don't say in the Fourth Circuit that if it's a gun crime, you can't say it's a gun crime, has a five-year sentence. We'll go to the second step. The Ninth Circuit there held that was fine. The Fourth Circuit doesn't disagree with that, but says when it's wire fraud, maybe it's different, or mail fraud. And we're saying the immigration judge did the work here, Your Honor. What did it do? The immigration judge looked at whether there was conspiracy to commit bank fraud. And if the elements are in agreement, which is conspiracy, and artifice or scheme to defraud, the immigration judge went through that and said, look, the facts are in Exhibit 2, which contained the indictment and the conviction documents. And the elements are in agreement, which is primary with respect to conspiracy to commit bank fraud and an artifice or scheme. And the immigration judge goes through saying, look, we have a complex scheme to defraud the bank here. And therefore, I'm moving on to consider the totality of the circumstances. So I think in looking at this, now, to be sure, would the court need to knit together some of the work here? But it's not so opaque that the court is frustrated in its deferential review here. The immigration judge did the work, because the work that the elements analysis is really doing is, does it put us within the ambit of a PSC? It's not doing the work of, should we conduct a categorical approach analysis under our ordinary aggravated felony or crime of violence. But I take it the thrust of what these cases are saying, we want to make sure that the IJ at Step 2 realized all that happened at Step 1 was just that, just a potentiality. It wasn't confused into thinking that it was more serious than that when they did the Step 2 analysis. And I think you can clearly do that with the immigration judge's statement in that regard in looking at both the, particularly when it cites the Valerio Ramirez decision, as well as the Soko decision, Your Honor. I think the immigration judge did the work on the elements analysis. So with that, if there's no more questions on the PSC, I'll turn to the Convention Against Torture claim. Again, my point at the top was, there's a gaping hole in the petitioner's evidence, because he points to his father's travails in Haiti, and says that he may be in hiding, and he may be deceased. There's nothing in the record, absolutely, about whether he may be deceased or not. His father sent documents, police records, to petitioner's relatives here in the United States. The immigration judge was keenly interested in that, and there's no declaration or statement from petitioner's father with respect to the conditions in Haiti in this particular case. So all the immigration judge had was, petitioner has not been in Haiti since 2008, so that's why I said at the top, there wasn't much to develop in that regard with respect to petitioner's evidence, because he hasn't been there since 2008. Now, the immigration judge and the board looked at the acquiescence question and found it lacking here, and that's why the immigration judge and the immigration agency denied the CAT claim. So if there's no further questions... Just very quickly, we talked about the obligation of the IJ to fully develop the record, but we've never given much content to that concept. So I gather it's your position here that, given the new material that was presented to the BIA, that was before the BIA when there was a remand, the IJ was aware of that, and looking at the nature of that evidence made the judgment there would be no point to try to fully develop the record in light of what might be regarded as a kind of offer of proof, because that really would not go to the requisite showings required by the Convention against Torture. So just, again, trying to understand your position, I think you're saying she really made the determination that there would be no point to try to more fully develop that, given the nature of the offer of proof. Is that really your position? I think that's correct, Your Honor. I think what we didn't say in the brief, and I think what we're driving at is sort of a futility analysis, and I'm not going to say it would be futile. We want immigration judges and the board to do their work. But in this case, the evidence that was presented and attached to that first notice appeal were statements by the sister and the aunt that didn't really go to acquiescence by the government. They talked about the travails of the family, but didn't really talk about the acquiescence. And again, in this record, we have the police statements that his father provided, that the police are investigating the incidents involving the father. And the petitioner hasn't been in Haiti since 2008, so again, that's why I said there wasn't much to develop in that regard. There's no further questions. What is the current status of people being removed to Haiti? There is temporary protected status for individuals in this country. So at the moment, both operationally and as a matter of policy, there aren't removals being conducted to Haiti. But even with TPS, the petitioner wouldn't be eligible because anybody with a felony conviction isn't eligible for temporary protected status. TPS aside, are people being removed to Haiti now who are not in TPS given the situation? No, not operationally. It's a fraud situation, Your Honor. I take it there's nothing that would prevent someone from filing a motion based on changed country conditions if they want to refer to what's going on today? Absolutely. By the statute and by the regulations, if they believe there's changed country conditions, they can file a motion to reopen within 90 days of their prior order. Or if they have changed country conditions, they don't have to comply with the deadline. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, if Counsel for the petitioner would please reintroduce himself on the record. He has a rebuttal. Good morning again, Your Honors. Todd Pommel on behalf of Mr. Lafoutine. Regarding the government's waiver arguments, I want to be brief on that. The issue is what the precedent requires from the immigration judge, not the non-citizen. And here, the precedent's not followed. To say it's waiver because we didn't point out the elements. The agency routinely looks at elements of crimes when doing proper analysis. This argument was brought forward to the BIA in that brief. The BIA was properly put on notice. There's an entire section dedicated to the argument. It's spelled out squarely and distinctly. And it doesn't require the BIA to be, quote, mind readers. That's the Zanina case from this court from 1990. It's not a skeletal argument. It's not perfunctory. It's not relegated to a footnote. It's not any of the classic waiver doctrine type cases you see here. So it is respectfully was brought to the agency for a determination to follow the proper standard. The BIA did not require the IJ to do this, and that is why remand is warranted here and why the issue is not waived. Regarding his role in the conspiracy, the record appendix, pages 724 to 28, actually have an affidavit from law enforcement that led to his indictments for these crimes for which he pleaded guilty that discusses his minimal role. That's not waived. That's part of the administrative record. It led to his charges. And under Joulin v. Holder and other cases cited in our brief, the immigration judge should have considered that if she did a proper Francesco analysis, which she did not do. And there's a lot of discussion that was just made about that's only happening to his father. This court has numerous cases about family membership, including the Pineda-Maldonado case that our office was part of a few months ago. That's an immutable characteristic. He can never change who his father is. His father is a proud patriot of Haiti. He's been trying to argue for democracy his entire life, and he's in hiding currently. And those considerations weren't given proper respect by the immigration judge. That evidence should have been considered. To say it's just his father is wrong. It's a matter of law. And I would respectfully ask this honorable court to remand the decision. Thank you very much for your time. I greatly appreciate it.